UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SINGULAR COMPUTING LLC,

       Plaintiff,

v.

GOOGLE LLC,

       Defendant.

C.A. No. 1:21-cv-12110-FDS

**DEFENDANT GOOGLE LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STAY**

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................................. 1
II. BACKGROUND .................................................................................................................... 2
    A.   *Singular I* ..................................................................................................................... 2
    B.   *Singular II* .................................................................................................................... 4
III. LEGAL STANDARD............................................................................................................ 5
IV. ARGUMENT ......................................................................................................................... 6
    A.   A temporary stay of this case is warranted. ................................................................. 6
        1.   Good cause exists for a stay.................................................................................6
        2.   The requested stay is reasonable in duration. ......................................................9
        3.   The competing equities do not counsel against a stay. ........................................9
V.  CONCLUSION.................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**

*ACQIS, LLC v. EMC Corp.*,
 109 F. Supp. 3d 352 (D. Mass. 2015) .................................................................... 6, 7, 8, 10

*Am. GNC Corp. v. LG Elecs. Inc.*,
 No. 17-CV-01090-BAS-BLM, 2018 WL 1250876 (S.D. Cal. Mar. 12, 2018) ......................... 7

*Aplix IP Holdings Corp. v. Sony Comput. Ent. Inc.*,
 137 F. Supp. 3d 3 (D. Mass. 2015) ...................................................................................... 10

*Bank of Am., N.A. v. WRT Realty, L.P.*,
 769 F. Supp. 2d 36 (D. Mass. 2011) ................................................................................... 5, 6

*Cooper Lighting, LLC v. Cordelia Lighting, Inc.*,
 No. 1:16-CV-2669-MHC, 2018 WL 11350482 (N.D. Ga. June 28, 2018) ............................. 7

*DiversiTech Corp. v. RectorSeal, LLC*,
 2021 WL 2953324 (D. Mass. July 14, 2021) ......................................................................... 9

*Finjan, Inc. v. FireEye, Inc.*,
 No. C 13-03133 SBA, 2014 WL 2465267 (N.D. Cal. June 2, 2014) ...................................... 7

*Google LLC v. Singular Computing LLC*,
 IPR2021-00155, Paper 16 (P.T.A.B. May 12, 2021) ............................................................... 3

*Google LLC v. Singular Computing LLC*,
 IPR2021-00179, Paper 16 (P.T.A.B. May 14, 2021) ............................................................... 3

*Google LLC v. Singular Computing LLC*,
 IPR2021-00165, Paper 16 (P.T.A.B. May 13, 2021) ............................................................... 3

*Holmes Grp., Inc. v. RPS Prods., Inc.*,
 No. 03-CV-40146-FDS, 2010 WL 7867756 (D. Mass. June 25, 2010) (Saylor, J.) ............... 2

*Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*,
 No. 3:15-CV-30005-MGM, 2016 WL 1735330 (D. Mass. Apr. 28, 2016) ................ 7, 10, 11

*Marquis v. F.D.I.C.*,
 965 F.2d 1148 (1st Cir. 1992) ................................................................................................. 5

*Monsanto Co. v. Scruggs*,
 459 F.3d 1328 (Fed. Cir. 2006) ............................................................................................... 2

*Murata Mach. USA v. Daifuku Co.*,
 830 F.3d 1357 (Fed. Cir. 2016) ............................................................................................... 6

*NST Glob., LLC v. SIG Sauer Inc.*,
   No. 19-CV-792-PB, 2020 WL 1429643 (D.N.H. Mar. 24, 2020) .......................................... 9, 11

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
   No. 5:13-CV-01356, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) ........................................... 10

*Promera Health, LLC v. Vireo Sys., Inc.*,
   No. 15-CV-12888-NMG, 2016 WL 861215 (D. Mass. Jan. 14, 2016) ...................................... 6

*SCVNGR, Inc. v. eCharge Licensing, LLC*,
   No. 13-CV-12418-DJC, 2014 WL 4804738 (D. Mass. Sept. 25, 2014) .................................. 10

**STATUTES**

35 U.S.C. § 316(a)(11) .............................................................................................................. 3

**I.      INTRODUCTION**

This is a follow-on patent infringement action in the shadow of another case pending before this Court, *Singular Computing LLC v. Google LLC*, No. 19-cv-12551-FDS (D. Mass. filed Dec. 20, 2019) ("*Singular I*"), which is currently stayed pending *inter partes* review ("IPR") of the asserted patents by the USPTO Patent Trial and Appeal Board ("PTAB"). There, Plaintiff Singular Computing LLC ("Singular") asserted three continuation patents directed to a single supposed invention—"low-precision high dynamic range" execution units—and alleged that each is infringed by the elements within the matrix multiplication units of Google's Tensor Processing Units ("TPUs") versions 2 and 3.

Notwithstanding the stay of *Singular I* in light of the pending PTAB proceedings, Singular filed this separate action ("*Singular II*") accusing the same products of infringing two additional continuation patents from the same family as the *Singular I* patents, both of which share the same inventor, title, and specification as the *Singular I* patents. Moreover, in both cases, Singular accuses, as part of its infringement assertions, the same elements within the matrix multiplication units of Google's TPUs. Not surprisingly, the *Singular II* complaint recites many of the same underlying factual allegations as in *Singular I*, ensuring this case will draw upon much of the same discovery as *Singular I* and will require the Court to resolve many overlapping issues—resulting in extraordinary waste of judicial and party resources if not carefully managed.

Accordingly, Google requests that the Court exercise its broad discretion to briefly stay this case pending the PTAB's Final Written Decisions on the patents at issue in *Singular I*, which are expected to issue by May 14, 2022. With the benefit of the PTAB's rulings, the Court and the parties can consider whether and how *Singular I* and *Singular II* should be coordinated so as to avoid duplicative litigation involving the same products, witnesses, and issues, as well as the

inconsistent findings that may result.[1] Because the requested stay is limited in duration, supported by good cause, and will not prejudice Singular, Google's motion should be granted.

## II.   BACKGROUND

### A.   *Singular I*

Singular filed the *Singular I* complaint on December 20, 2019, and the operative First Amended Complaint ("FAC") on March 20, 2020. *Singular I*, ECF Nos. 1, 37. The FAC alleges that Google's TPUs[2] infringe three Singular patents allegedly relating to "low-precision high dynamic range" ("LPHDR") execution units: U.S. Patent Nos. 8,407,273, 9,218,156, and 10,416,961 (the "*Singular I* patents"). *Id.*, ECF No. 37 ¶¶ 31, 87, 90, 104, 107, 122, 125. All three *Singular I* patents are titled "Processing with Compact Arithmetic Processing Element," name Joseph Bates as the sole inventor, and are part of the same family: the '961 patent issued from a continuation of the application for the '156 patent, which in turn issued from a continuation of the application for the '273 patent. '961 patent at [63]. The patents' specifications are therefore substantively identical,[3] and each is set to expire on the same day as each is subject to the same terminal disclaimer. Singular alleged that the claims of the *Singular I* patents are directed to "processing elements" that "perform low precision and high dynamic range (LPHDR) arithmetic operations," meaning they may "generate, in response to requests to perform arithmetic operations,

---

[1] A short stay would also serve judicial economy in the near term by, among other things, allowing the Court to defer ruling on Google's concurrently-filed motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

[2] TPUs are specialized hardware utilized in certain high-performance computing applications.

[3] Continuation applications "necessarily have almost identical specifications." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1337 (Fed. Cir. 2006); *see also Holmes Grp., Inc. v. RPS Prods., Inc.*, No. 03-CV-40146-FDS, 2010 WL 7867756, at *2 n.3 (D. Mass. June 25, 2010) (Saylor, J.) ("A continuation patent claims the filing date priority of the parent application, and must use the same disclosure as the parent, must name at least one of the same inventors as in the parent, and must be filed while the parent is still pending").

2

results that materially differ from the exact results of those operations." *Singular I*, ECF No. 37 ¶¶ 9, 11. In its September 2020 infringement contentions, Singular asserted four claims across the three patents.

Between October and November 2020, Google filed petitions seeking IPR of all the *Singular I* patents, challenging the validity of the four asserted claims (in addition to other unasserted claims) over the prior art. Between May 12-14, 2021, the PTAB instituted IPR proceedings on all three of the asserted patents.[4] In accordance with the statute, the PTAB is expected to issue Final Written Decisions in all three IPR proceedings no later than 1 year after the respective institution decisions—i.e., by **May 12-14, 2022**. 35 U.S.C. § 316(a)(11).

Following the PTAB's institution decisions, Google moved to stay *Singular I*. *Singular I*, ECF No. 181, 182. In seeking the stay, Google pointed out—and Singular did not dispute—that "Singular does not compete with Google" and therefore would not be prejudiced by a stay.[5] *Id.*, ECF No. 203 at 10-11 & n.10. After evaluating the relevant factors, the Court granted Google's motion and stayed *Singular I* pending resolution of the IPR proceedings.[6] *Id.*, ECF No. 212; *Id.*, ECF No. 224 (6/10/21 Hr'g Tr.) at 35-37.

---

[4] *See Google LLC v. Singular Computing LLC*, IPR2021-00179, Paper 16 at 39 (P.T.A.B. May 14, 2021), *available at Singular I*, ECF No. 183-5; *Google LLC v. Singular Computing LLC*, IPR2021-00165, Paper 16 at 40 (P.T.A.B. May 13, 2021), *available at Singular I*, ECF No.183-4; *Google LLC v. Singular Computing LLC*, IPR2021-00155, Paper 16 at 37 (P.T.A.B. May 12, 2021), *available at Singular I*, ECF No. 183-3.

[5] Indeed, as Google noted, Dr. Joseph Bates, the sole named inventor on Singular's patents, submitted a declaration in support of Singular's opposition to Google's motion to stay in *Singular I* reflecting that he "has tried, and failed, to commercialize his purported invention for more than a decade." *Singular I*, ECF No. 203 at 11 n.10.

[6] Specifically, the Court stayed *Singular I* through the expected date for Final Written Decisions in the IPRs, i.e., May 12, 2022, "except for the completion of fact discovery and other matters that I've indicated." *Singular I*, ECF No. 224 (6/10/21 Hr'g Tr.) at 37:6-10, 34:14-23; *see id.*, ECF No. 212.

3

While *Singular I* was pending, Singular continued to prosecute applications in its LPHDR patent family. On May 25, 2020, Singular filed two continuations of the application for the '961 patent (which was asserted in *Singular I*). The continuation applications were granted on August 25, 2020 and November 9, 2021, as U.S. Patent Nos. 10,754,616 and 11,169,775, respectively (the "*Singular II* patents"). Although the '616 patent issued only a few months after Singular filed its FAC in *Singular I*, and before Singular's Local Rule 16.6(d)(1)(A) infringement contentions were due, Singular never sought leave to amend its FAC to assert that patent in *Singular I*.

    **B.**    ***Singular II***

On December 22, 2021, Singular filed its complaint in the present case, alleging Google infringed the *Singular II* patents. ECF No. 1 ("Compl.") ¶¶ 20-21. As in *Singular I*, Singular's complaint in this case accuses Google's TPUs of infringing the *Singular II* patents. *See, e.g.*, *id.* ¶¶ 40, 48, 51, 102, 104-105. Indeed, Singular's complaint accuses the same two versions of Google's TPUs (v2 and v3) of infringement as were accused in *Singular I*, as well as a later version (v4). *See id.* ¶¶ 16, 56.

As continuations of the *Singular I* patents, the *Singular II* patents are part of the same family and have the same specification; they also share the same title and the same inventor as the *Singular I* patents. Singular, for its part, contends that the claims of the *Singular II* patents are directed to the same subject matter as the *Singular I* patents—*i.e.*, "low-precision processing elements." Compl. ¶ 36. Indeed, Singular's complaint alleges that the claims of the *Singular II* patents are so similar to the claims of the ancestor *Singular I* patents that Google should have known, based solely on Singular's infringement contentions in *Singular I*, that the accused TPUs infringe the *Singular II* patents as well:

> By the date of issuance of the '616 patent, due to its knowledge of Singular's Infringement Contentions served in case No. 1:19-cv-12551 (D. Mass.) involving patents related to the '616 patent, Google knew or should have known that the accused TPUs infringe . . . claims of the '616 patent and/or that there was a high probability that the accused TPUs infringe the '616 patent.

*Id.* ¶ 96. Likewise, Singular reiterates its claim from *Singular I* that "unless [Google] incorporated Dr. Bates's patented technology, it would have had to at least double its number of data centers in the U.S. . . . to accommodate increased demand," costing Google billions of dollars. *Singular I*, ECF No. 37 ¶ 24; *see also* Compl. ¶ 17 ("[U]nless [Google] incorporated Dr. Bates's patented technology, it would have had to at least double its number of data centers in the U.S."). In both cases, Singular seeks actual damages, enhanced damages, injunctive relief, and a trial by jury.

Google has not yet answered the complaint in this case,[7] the Court has not yet scheduled an initial case management conference, no discovery has been propounded or taken, and no case schedule or trial date has been set.

### III.   LEGAL STANDARD

A district court's "discretionary power to stay proceedings" is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Bank of Am., N.A. v. WRT Realty, L.P.*, 769 F. Supp. 2d 36, 39 (D. Mass. 2011); *see also Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154 (1st Cir. 1992) ("It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires [it].").

---

[7] As noted above, Google has filed a motion to dismiss pursuant to Rule 12(b)(6) concurrently with this motion.

"The court may stay a case if 1) there is good cause to do so, 2) the stay is reasonable in duration and 3) it ensures that the competing equities are weighed and balanced." *Promera Health, LLC v. Vireo Sys., Inc.*, No. 15-CV-12888-NMG, 2016 WL 861215, at *5 (D. Mass. Jan. 14, 2016).[8] Ultimately, exercise of the discretionary power to stay a case "involves balancing the interests of the parties and the Court." *Bank of Am., N.A.*, 769 F. Supp. 2d at 39. When it is "likely to conserve judicial and party time, resources, and energy," a stay is appropriate. *Id*.

## IV.  ARGUMENT

### A.  A temporary stay of this case is warranted.

#### 1.  Good cause exists for a stay.

This case is in its earliest stages: the complaint has just been filed, and the Court has yet to hold an initial case management conference or set a case schedule. Accordingly, the brief stay Google seeks would not impact any existing deadlines or schedule for this case. To the contrary, the nascent stage of the case means a brief stay is likely to benefit both the parties and the Court by allowing them to obtain more information relating to whether and how the case should be coordinated with *Singular I*. See *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015) ("The earlier the stage of proceedings, the greater the reason to grant a stay."). Given the close relationship between the *Singular I* and *Singular II* patents, there will undoubtedly be overlap between the *Singular I* and *Singular II* proceedings, and a stay will allow the parties and the Court

---

[8] Similarly, a court considering a stay pending IPR typically considers three factors: "(1) the stage of the litigation . . . (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015). However, those factors are not prescriptive; "attendant to the district court's inherent power to stay proceedings is the court's discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016).

6

to account for that overlap, for example, by shaping the schedule and parameters of discovery for this case. At a minimum, a brief stay will allow the Court and the parties to have more information available relevant to whether and how the cases should be coordinated so as to avoid the needless expenditure of judicial and party resources.

Moreover, numerous courts, including in this District, have stayed patent infringement suits pending the outcome of IPR proceedings on the rationale that doing so could save both the parties and the court from potentially needless expenditure of time, energy, and effort, as well as facilitate trial by "providing the court with the PTAB's expert opinion" on the patentability and scope of the claims. *Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, No. 3:15-CV-30005-MGM, 2016 WL 1735330, at *3 (D. Mass. Apr. 28, 2016). Indeed, courts have routinely stayed such cases even for patents <u>not</u> subject to IPR, where related patents were being reviewed by the PTAB. For example, in *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356-59 (D. Mass. 2015), the court stayed an 11-patent infringement suit in its entirety, even though nine of the asserted patents were not subject to IPR proceedings, due to the "significant overlap" between those nine patents and the two asserted patents undergoing IPR. *ACQIS*, 109 F. Supp. 3d at 357-58. The court reasoned that proceeding with the nine patents not subject to IPR "could result in costly inefficiencies for the parties and the Court." *Id.* at 358; *see also, e.g.*, *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, No. 1:16-CV-2669-MHC, 2018 WL 11350482, at *4 (N.D. Ga. June 28, 2018) (staying case pending IPRs where "two of the four" asserted patents were subject to IPR); *Am. GNC Corp. v. LG Elecs. Inc.*, No. 17-CV-01090-BAS-BLM, 2018 WL 1250876, at *4 (S.D. Cal. Mar. 12, 2018) (staying case pending IPRs even though "only two of the seven patents-in-suit are the subjects of the pending IPR petitions"); *Finjan, Inc. v. FireEye, Inc.*, No. C 13-03133 SBA, 2014 WL 2465267, at *4 (N.D. Cal. June 2, 2014) (staying case pending USPTO reexamination

of minority subset of asserted patents). These principles squarely apply here and constitute further good cause to stay this case for a short period of time pending resolution of the IPRs of the related *Singular I* patents.

Had Singular asserted the *Singular I* and *Singular II* patents in a single case, rather than seriatim, it is highly likely that application of the Court's reasoning for a stay pending the outcome of the IPRs would have resulted in a stay of the *Singular II* patents as well, as in *ACQIS*, given the close relationship among the patents and the identity of parties and accused products. *See, e.g.*, *ACQIS*, 109 F. Supp. 3d at 356-59. In fact, there is no reason Singular could not have asserted the '616 patent, one of the two asserted here, in *Singular I*. The '616 patent issued on August 25, 2020—just a few months after Singular filed its FAC in *Singular I*, before it served infringement contentions in *Singular I*, and well over a year before filing its complaint in this case. Singular could easily have sought leave to amend its complaint to assert the '616 patent in *Singular I*, rather than waiting almost 16 months after its issuance to assert it here.

Although the *Singular II* patents are not presently subject to IPR, they share a common ancestry with the *Singular I* patents, bearing the same title, named inventor, and specification. Indeed, the *Singular II* patents issued from continuation applications of the *Singular I* patents, and are thus part of the same patent family. And according to Singular's respective allegations in *Singular I* and *Singular II*, it apparently takes the position that the claims in each set of patents are directed to substantially similar subject matter. *Compare* Compl. ¶ 36 (asserting that patents "claim[] low-precision processing elements . . . [that] generate, in response to a request to perform arithmetic operations on high dynamic range numbers, results that materially differ from the exact, accurate results of those operations"), *with Singular I*, ECF No. 37 ¶¶ 9, 11 (asserting that claims cover "processing elements" "designed to perform low precision and high dynamic range

8

(LPHDR) arithmetic operations" that "generate, in response to requests to perform arithmetic operations, results that materially differ from the exact results of those operations"). Whether or not the claims of the *Singular I* patents are held unpatentable by the PTAB, the PTAB's Final Written Decisions will undoubtedly be informative for both the parties and the Court, at the very least regarding how the two cases should be managed.

There are myriad other ways that the outcome of the IPRs on the *Singular I* patents could impact this case, including that "the outcome of the [IPRs] may encourage a settlement" without further Court involvement and "the cost of litigation will likely be reduced." *NST Glob., LLC v. SIG Sauer Inc.*, No. 19-CV-792-PB, 2020 WL 1429643, at *3 (D.N.H. Mar. 24, 2020) (staying patent case based on pre-institution IPR petitions). In short, there is good cause for a short stay of this case pending resolution of the IPR proceedings on the *Singular I* patents.

### 2. The requested stay is reasonable in duration.

Because a stay pending resolution of the *Singular I* IPRs would be brief, this factor also weighs in favor of a stay. Final Written Decisions in the IPR proceedings are expected by May 12-14, 2022, which is approximately 90 days from the filing of this motion. Such a short stay, keyed to resolution of IPR proceedings on closely related patents, is eminently reasonable. *See DiversiTech Corp. v. RectorSeal, LLC*, 2021 WL 2953324, at *3 (D. Mass. July 14, 2021) (characterizing as "brief" a seven-month stay of patent suit based on pre-institution IPR petitions); *NST Glob.*, 2020 WL 1429643, at *4 (characterizing four-month stay based on pre-institution IPR petitions as a "relatively brief pause").

### 3. The competing equities do not counsel against a stay.

The competing equities involved do not counsel against a stay because Singular would neither be unduly prejudiced nor tactically disadvantaged in any way. While any stay "risks delaying the final resolution of the dispute," that potential for delay "does not, by itself, establish

9

undue prejudice." *SCVNGR, Inc. v. eCharge Licensing, LLC*, No. 13-CV-12418-DJC, 2014 WL 4804738, at *9 (D. Mass. Sept. 25, 2014). Rather, cognizable prejudice must be *undue*, such as from "the potential for loss of market share" "in a marketplace in which the parties are direct competitors." *Irwin Indus. Tool*, 2016 WL 1735330, at *3-4; *see also ACQIS*, 109 F. Supp. 3d at 358 (finding no undue prejudice from stay where "parties are not direct competitors, and [plaintiff] is a non-practicing entity").

Singular has never alleged or argued—and there is no reason to believe—that it competes with Google. In fact, Singular effectively conceded the contrary in response to Google's motion to stay in *Singular I*. *See Singular I*, ECF No. 203 at 10-11 & n.10. Thus, there would be no potential prejudice to Singular in the marketplace while the case is stayed. Moreover, Singular has not sought a preliminary injunction here, further "undermining [any] claim of undue prejudice." *ACQIS*, 109 F. Supp. 3d at 358. Instead, Singular only seeks money damages and a permanent injunction, *see* Compl. at 35, which further confirms it will suffer no undue prejudice. *See Aplix IP Holdings Corp. v. Sony Comput. Ent. Inc.*, 137 F. Supp. 3d 3, 6 (D. Mass. 2015) (finding no undue prejudice from a stay because patentee "will still be able to seek [a permanent] injunction, as well as monetary damages with prejudgment interest," after stay); *ACQIS*, 109 F. Supp. 3d at 358 (same, because plaintiff "will still have all of its legal and equitable remedies available when the stay is lifted"); *SCVNGR*, 2014 WL 4804738, at *9 (same, because any delay in recovering monetary damages is "not meaningful where the prevailing party in patent cases may recover prejudgment interest"). In short, because "the parties are not competitors, any harm from the temporary halt in enforcing [Singular's] rights . . . can be addressed through a final damages award." *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014).

Singular's own lack of urgency asserting the *Singular II* patents underscores that it would face no undue prejudice from the short stay that Google seeks. As noted, the '616 patent, one of the two asserted here, could have been asserted in *Singular I*. Had there been any urgency for Singular to vindicate its rights in that particular patent, it could have sought leave to amend its complaint in *Singular I* to assert the '616 patent, rather than waiting almost 16 months after issuance to assert it here. *See Irwin Indus. Tool*, 2016 WL 1735330, at *5 (finding plaintiff's delay of "more than three months from filing its complaint . . . before serving Defendant" "demonstrates some lack of urgency" and "tends to undermine [a] claim of undue prejudice").

There is also no risk that Singular will be put at a tactical disadvantage due to the loss of documents or fading of memories during the brief stay that Google seeks. Final written decisions in the IPR proceedings on the *Singular I* patents are expected to issue by May 12-14, 2022, which is just over 90 days from now, and it beggars belief that the passage of such a short period of time creates any risk of evidence becoming lost or unavailable. In any event, "speculation that evidence will be lost, without more, is insufficient to demonstrate undue prejudice." *NST Glob.*, 2020 WL 1429643, at *6. Accordingly, this factor, too, weighs in favor of a stay.

### V.     CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court stay this action pending the PTAB's final written decisions in the IPR proceedings on the *Singular I* patents.

Date: February 11, 2022                               Respectfully submitted,

/s/ Nathan R. Speed
Gregory F. Corbett (BBO #646394)
gcorbett@wolfgreenfield.com
Nathan R. Speed (BBO # 670249)
nspeed@wolfgreenfield.com
Anant K. Saraswat (BBO #676048)
asaraswat@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
edimarco@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Robert Van Nest*
rvannest@keker.com
Michelle Ybarra*
mybarra@keker.com
Eugene M. Paige*
epaige@keker.com
Andrew Bruns*
abruns@keker.com
Vishesh Narayen*
vnarayen@keker.com
Anna Porto*
aporto@keker.com
Deeva Shah*
dshah@keker.com
Stephanie J. Goldberg*
sgoldberg@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

Michael S. Kwun*
mkwun@kblfirm.com
Asim Bhansali*
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA  94111
(415) 630-2350

Matthias A. Kamber*
mattiaskamber@paulhastings.com
PAUL HASTINGS, LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
Phone: (415) 856-7050
Fax: (415) 856-7150

*Counsel for Defendant Google LLC*
*\*motions for pro hac vice to be filed*

**CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

Date: February 11, 2022                  /s/ Nathan R. Speed
                                                  Nathan R. Speed